IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| PERRY BREAKIRON, ID # 1058576, | ) | |
| Petitioner, | ) | |
| vs. | ) | No. 3:04-CV-1055-D (BH) |
| | ) | ECF |
| NATHANIEL QUARTERMAN,[1] Director, | ) | Referred to U.S. Magistrate Judge |
| Texas Department of Criminal | ) | |
| Justice, Correctional Institutions Division, | ) | |
| Respondent. | ) | |

FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE

Pursuant to the provisions of 28 U.S.C. § 636(b), and an order of the Court in implementa-

tion thereof, subject cause has previously been referred to the United States Magistrate Judge.  The

findings, conclusions, and recommendation of the Magistrate Judge are as follows:

## I.  BACKGROUND

### A.  Nature of the Case

Petitioner, an inmate currently incarcerated in the Texas Department of Criminal Justice -

Correctional Institutions Division (TDCJ-CID), filed the instant petition for writ of habeas corpus

pursuant to 28 U.S.C. § 2254 to challenge his conviction for burglary of a habitation in Cause No.

20,412.  Respondent is Nathaniel Quarterman, Director of TDCJ-CID.

### B.  Procedural and Factual History

On November 17, 2000, the State indicted petitioner for burglary of a habitation.  CR[2] at 6-9

(indictment).  At trial, the State presented testimony from law enforcement personnel and Charles

---

[1] On June 1, 2006, Nathaniel Quarterman became the Director of the Texas Department of Criminal Justice - Correctional Institutions Division.  The Court thus substitutes him for Douglas Dretke.  *See* Fed. R. Civ. P. 25(d)(1).

[2] "CR" refers to the Clerk's Record in Cause No. 20,412.

Muller,[3] the victim of the burglary.    Muller testified that someone entered his house without permission on August 19, 2000, and stole several items, including a watch, money, three credit cards, a jewelry box, and car keys. Rep.'s R., Vol. VIII at 77, 82-84 [hereinafter cited as RR-volume # at page].    He also testified that police officers returned the keys and two watches – one that he had thought that he had "previously lost" and one that was missing from the burglary.    *Id.* at 90.

Officer McDaniel testified that she responded to a request for assistance related to the burglary of Muller's home, and as she approached an intersection near the burglarized home,[4] she encountered petitioner who was walking alone down the street. RR-IX at 34-36.    She further testified that she observed "something in his hand", asked him to "step back" when he approached her vehicle, and "heard keys drop" when she looked away briefly to activate her lights. *Id.* at 36-37.    As she thereafter questioned petitioner, she observed keys and some other items on the ground near him. *Id.* at 37-38.    She also observed that he no longer had anything in his hands. *Id.* at 38.

Officer Betterton testified that he also responded to the call regarding the burglary, and when he came upon petitioner and Officer McDaniel, he stopped to assist. RR-VIII at 118-19, 124-25. He also testified that he recovered two watches and a set of keys from an area near petitioner, and that petitioner had "several quarters in his possession" with the new state designs on the back. *Id.* at 127, 132-34.    He further testified that Muller identified the watches and keys as items taken from the home. *Id.* at 131.

---

[3]  The record contains two spellings for the victim's name – Mueller and Muller.    The Court utilizes the latter spelling because it is more prevalent in the record.

[4]  The testimony places the intersection approximately two to two and a half blocks or about three-tenths of a mile from the burglary. *See* RR-IX at 19, 27, 76.

Officer Moore testified that he responded to the burglary and Muller advised him that the burglar took a watch and some money, including some new state quarters. *Id.* at 99. He also testified that the recovered keys fit vehicles at the burglarized house. *Id.* at 102.

The State also introduced a portion of a letter from petitioner to his mother in which he asked his mother to apologize to the Mullers for his actions. *See* RR-IX at 70-71; State's Ex. 2a (contained within Ex. Index, RR-XIII).[5] The State also introduced a letter from petitioner's mother to the Mullers wherein she wrote: "I am so sorry about my son's behavior toward you and your home – I wish I could make reparation, but don't know how!" *See* RR-IX at 70-71; State's Ex. 1 (contained within Ex. Index). Before the trial court admitted such documents, it held a hearing outside the presence of the jury in which it heard testimony from petitioner's mother. *See* RR-IX at 60-70.

On August 7, 2001, a jury found petitioner guilty as charged in the indictment. RR-IX at 108. The next day, the trial court sentenced him to sixty years imprisonment. RR-X at 21.

On November 5, 2002, the Fifth District Court of Appeals of Texas at Dallas affirmed the conviction. *Breakiron v. State*, No. 05-01-01280-CR, 2002 WL 31455743, at *1 (Tex. App. – Dallas Nov. 5, 2002, pet. ref'd). On March 19, 2003, the Texas Court of Criminal Appeals refused petitioner's petition for discretionary review. (Pet. Writ of Habeas Corpus (Pet.) at 3.) On September 11, 2003, petitioner filed a state application for writ of habeas corpus. S.H. Tr.[6] at 6. On April 21,

---

[5] The trial court ordered the State to redact the letter so that only two sentences would be submitted to the jury. *See* RR-IX at 65. Although the copy of State's Ex. 2a contained within the Exhibit Index is essentially blank, the hearing that the trial court conducted outside the presence of the jury reveals that the two sentences read: "I realize it's asking a great deal for you to talk to the Mullers and I'm very sorry for all I've put them through and your friendship with them. I was out of control and hurt everybody involved." *Id.* at 64.

[6] "S.H. Tr." denotes the state habeas records attached to *Ex parte Breakiron*, No. 58,178-01, slip op. (Tex. Crim. App. Apr. 21, 2004).

2004, the Texas Court of Criminal Appeals denied petitioner's application without written order. *Ex parte Breakiron*, No. 58,178-01, slip op. at 1 (Tex. Crim. App. Apr. 21, 2004). Petitioner filed no other relevant writs with respect to his burglary conviction.[7]

On May 17, 2004, the Court received the instant petition for federal habeas relief. (*See* Pet. at 1). Respondent thereafter filed an answer and provided the state-court records. Petitioner subsequently filed objections to the answer. (Petr.'s Obj'ns Answer, hereinafter referred to as Reply.) Petitioner later moved to amend his reply. The Court denied the motion to amend, but indicated that it would consider the attachment to that motion as a supplement to petitioner's reply.

**C. Substantive Issues**

Petitioner raises the following claims in this action: (1) ineffective assistance of trial counsel; (2) denial of self-representation; (3) actual innocence or no evidence; and (4) trial court commentary on the weight of the evidence. (*See* Pet. at 7-8.)

**D. Exhaustion**

Respondent concedes that petitioner has sufficiently exhausted his state remedies with respect to the claims raised in the instant petition. (Answer at 5.) On direct appeal, petitioner challenged the sufficiency of the evidence; asserted various claims of ineffective assistance of counsel; and argued that the trial court erred when it commented on the weight of the evidence and when it admitted the letter from his mother. *See Breakiron v. State*, No. 05-01-01280-CR, 2002 WL 31455743, at *1-6 (Tex. App. – Dallas Nov. 5, 2002, pet. ref'd). In his state habeas application, he

---

[7] The state record shows that petitioner filed a "Supplement Application for Writ of Habeas Corpus" in April 2004 that the Court of Criminal Appeals dismissed as an abuse of the writ on June 2, 2004. The record further shows that the Court of Criminal Appeals denied petitioner leave to file a petition for writ of mandamus. In view of the rulings by the Court of Criminal Appeals these filings are immaterial to the matters before this Court.

specifically asserted the same claims of ineffective assistance of counsel raised in this federal action, (*compare* S.H. Tr. at 15 *with* Pet. at 7(A)-7(B)), and further asserted that he was denied his right to represent himself at trial; insufficient evidence supported his conviction; and the trial court erred in admitting the letter from his mother, S.H. Tr. at 11-12, 15, 28-29.

## II. APPLICABLE LAW

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. 104-132, 110 Stat. 1217, on April 24, 1996. Title I of the Act applies to all federal petitions for habeas corpus filed on or after its effective date. *Lindh v. Murphy*, 521 U.S. 320, 326 (1997). Because petitioner filed the instant petition after its effective date, the Act applies to his petition.

Title I of AEDPA substantially changed the way federal courts handle habeas corpus actions. Under 28 U.S.C. § 2254(d), as amended by AEDPA, a state prisoner may not obtain relief

> with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

"In the context of federal habeas proceedings, a resolution (or adjudication) on the merits is a term of art that refers to whether a court's disposition of the case was substantive, as opposed to procedural." *Miller v. Johnson*, 200 F.3d 274, 281 (5th Cir. 2000).

In this case, the AEDPA standards apply to the claims that petitioner raised on direct appeal which were decided on the merits by the appellate court. The court of appeals specifically adjudicated petitioner's appellate claims on the merits, except for his claim that the trial court erred in

commenting on the weight of the evidence. *See Breakiron v. State*, No. 05-01-01280-CR, 2002 WL 31455743, at *1-6 (Tex. App. – Dallas Nov. 5, 2002, pet. ref'd). With respect to the latter claim, the appellate court relied on a lack of contemporaneous objection to find that petitioner had "waived [the] error, if any." *Id.* at *4.

In addition, the denial of petitioner's state writ constitutes an adjudication on the merits of the claims raised therein, except for the claimed insufficiency of the evidence. *See Ex parte Grigsby*, 137 S.W.3d 673, 674 (Tex. Crim. App. 2004) (clarifying that a denial signifies an adjudication on the merits of those claims that can be reached, but constitutes a procedural ruling on insufficiency claims raised in a state writ because such claims "*can never be decided*" on habeas review); *Ex parte Thomas*, 953 S.W.2d 286, 288-89 (Tex. Crim. App. 1997) (holding that a denial, rather than a dismissal, signifies an adjudication on the merits). Thus, for the claims raised in petitioner's state writ other than the claim of insufficient evidence, the AEDPA standards enumerated in 28 U.S.C. § 2254(d) apply.

Because no state court has adjudicated the merits of the alleged error of the trial court related to the alleged comment on the weight of the evidence, the AEDPA standards do not apply to it. *See Miller v. Johnson*, 200 F.3d 274, 281 n.4 (5th Cir. 2000) ("Review is *de novo* when there has been no clear adjudication on the merits."). The AEDPA standards enumerated in 28 U.S.C. § 2254(d) otherwise apply to petitioner's claims.

Section 2254(d)(1) concerns pure questions of law and mixed questions of law and fact. *Martin v. Cain*, 246 F.3d 471, 475 (5th Cir. 2001). A decision is contrary to clearly established federal law, within the meaning of § 2254(d)(1), "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case

differently than [the] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).

With respect to the "unreasonable application" standard, *Williams* instructs that a writ must issue "if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413; *accord Penry v. Johnson*, 532 U.S. 782, 792 (2001). Likewise under *Williams*, a state court unreasonably applies Supreme Court precedent if it "unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." 529 U.S. at 407. "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 409; *accord Penry*, 532 U.S. at 793.

Section 2254(d)(2) concerns questions of fact. *Moore v. Johnson*, 225 F.3d 495, 501 (5th Cir. 2000). Under § 2254(d)(2), federal courts "give deference to the state court's findings unless they were 'based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.'" *Chambers v. Johnson*, 218 F.3d 360, 363 (5th Cir. 2000). The resolution of factual issues by the state court is presumptively correct and will not be disturbed unless the state prisoner rebuts the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

With these AEDPA standards in mind, the Court proceeds to address the merits of petitioner's various claims. Because the resolution of some claims are somewhat dependent upon other claims, the Court will address petitioner's claims in a different order than presented to it.

## III.  ACTUAL INNOCENCE

In his third claim, petitioner argues that he is actually innocent because no evidence supports his conviction.  (Pet. at 7.)  He contends that he "is actually innocent and will demonstrate through Police offense reports, and complainant . . . [and a list] of stolen items that were [sic] not presented at trial, that there is no evidence to convict him of burglary of a habitation."  (Reply at 22.)  He also appears to argue that ineffective assistance of counsel renders him actually innocent of the charged offense.  (*See id.* at 22-26.)

With respect to whether a petitioner may obtain federal habeas relief on a claim of actual innocence, the Fifth Circuit Court of Appeals has recognized *Townsend v. Sain*, 372 U.S. 293 (1963) as the unequivocal position of the United States Supreme Court on the matter.  *See Boyd v. Puckett*, 905 F.2d 895, 896 (5th Cir. 1990); *Armstead v. Maggio*, 720 F.2d 894, 896 (5th Cir. 1983) (per curiam).  In *Townsend*, the Court held that "the existence merely of newly discovered evidence relevant to the guilt of a state prisoner is not a ground for relief on federal habeas corpus."  372 U.S. at 317, *overruled in part on other grounds*, *Keeney v. Tamayo-Reyes*, 504 U.S. 1 (1992).  In the Fifth Circuit, actual innocence is not an independent basis for federal habeas relief.  *E.g., Graham v. Johnson*, 168 F.3d 762, 788 (5th Cir. 1999); *Lucas v. Johnson*, 132 F.3d 1069, 1075 (5th Cir. 1998); *Jacobs v. Scott*, 31 F.3d 1319, 1324 (5th Cir. 1994).  Petitioner thus cannot succeed on his actual innocence claim standing alone.

Petitioner, moreover, has not established that he is actually innocent.  The Supreme Court has held that to show actual innocence, a petitioner must establish:

> that it is more likely than not that no reasonable juror would have found [him] guilty beyond a reasonable doubt . . . in light of all of the evidence, including that alleged to have been illegally admitted (but with due regard to any unreliability of it) and

evidence tenably claimed to have been wrongly excluded or to have become available only after trial.

*Schlup v. Delo*, 513 U.S. 298, 321 (1995).

Petitioner has not met this standard.  A jury found him guilty on the evidence presented against him.  Furthermore, he points to no new evidence which exonerates him.  (*See* Pet. at 7; Reply at 21-26.)  Although the police reports concerning various robberies of Mr. Muller reveal potential inconsistencies between his alleged statements to the police and his trial testimony on August 19, 2000, regarding what items were allegedly stolen, (*compare* RR-VIII at 82-84 (testimony of Muller that someone stole a watch, some money, three credit cards, a jewelry box, and car keys from his home on August 19, 2000) *with* Ex. 11 attached to Reply (statement of Muller that a someone took "all our credit cards" on August 14, 2000; someone took a watch and "emptied [his] wife's purse and a . . . jewelry box" on August 17, 2000; and someone took money and a "second watch" on  August 18, 2000); Ex. 13A attached to Reply (police report dated Aug. 19, 2000, that shows the theft of two watches,  twelve quarters,  nineteen dimes,  six nickels,  a set of keys,  and other United States currency); Ex. 14A attached to Reply (police report dated Aug. 15, 2000, that shows the theft of a CD changer, $100, and two credit cards); Ex. 15A attached to Reply (police report dated Aug. 16, 2000, that shows the theft of twelve pairs of earrings; ten gold colored chains; a jewelry box, a watch, and a credit card), these potential inconsistencies do not constitute evidence of actual innocence.

With respect to petitioner's apparent argument that ineffective assistance of counsel renders him actually innocent, petitioner confuses two distinct concepts – actual innocence and ineffective assistance of counsel.  Whether or not he received the effective assistance of counsel has no bearing on whether he is actually innocent.  In addition, actual innocence differs materially from a claim of

9

insufficiency of the evidence. The Court will address petitioner's claims of ineffective assistance and insufficiency of the evidence later in these findings.

Because a claim of actual innocence is not cognizable on federal habeas corpus, and petitioner has not shown himself to be actually innocent in any event, this claim entitles him to no federal habeas relief.

## IV. INSUFFICIENCY OF THE EVIDENCE

In his third claim, petitioner also asserts that no evidence supports his conviction. (Pet. at 7; Reply at 21-22.)

A claim that "no evidence" supports a conviction is the same as a challenge to the legal sufficiency of the evidence. *See Haley v. Cockrell*, 306 F.3d 257, 266-67 (5th Cir. 2002) (noting that a claim of "no evidence" is the same as a claim of insufficiency of the evidence), *vacated on other grounds*, 541 U.S. 386 (2004); *United States v. Jackson*, 86 Fed. App'x 722, 722 (5th Cir. 2004) (per curiam) (applying insufficiency-of-the-evidence analysis to claim of "no evidence").

"A criminal defendant has a federal due process right to be convicted only upon evidence that is sufficient to prove beyond a reasonable doubt the existence of every element of the offense." *Foy v. Donnelly*, 959 F.2d 1307, 1313 (5th Cir. 1992). Federal courts have extremely limited habeas review of claims based on the sufficiency of the evidence, and the standard for reviewing such claims is supplied by *Jackson v. Virginia*, 443 U.S. 307 (1979). When reviewing such claims against the underlying conviction, the relevant question "is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319. When "faced with a record of historical facts that supports conflicting inferences [courts] must presume – even if it does not affirmatively

appear in the record – that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Id.* at 326. Further, under *Jackson*, "the assessment of the credibility of witnesses is generally beyond the scope of review." *Schlup v. Delo*, 513 U.S. 298, 330 (1995). "Determining the weight and credibility of the evidence is within the sole province of the jury." *United States v. Martinez*, 975 F.2d 159, 161 (5th Cir. 1992). Courts view "any required credibility determinations in the light most favorable to the guilty verdict." *United States v. Wise*, 221 F.3d 140, 154 (5th Cir. 2000). They do not "second-guess[] the weight or credibility given the evidence." *United States v. Ramos-Garcia*, 184 F.3d 463, 465 (5th Cir. 1999). The *Jackson* standard applies whether the evidence is direct or circumstantial. *United States v. Scott*, 159 F.3d 916, 920 (5th Cir. 1998).

Federal courts apply the *Jackson* "standard looking to the state's substantive law, giving great weight to the state court's determination." *Miller v. Johnson*, 200 F.3d 274, 286 (5th Cir. 2000). State case law and statutes bind the courts in their determination of the elements needed to be proven. *Foy v. Donnelly*, 959 F.2d 1307, 1313 (5th Cir. 1992). In reviewing a challenge to the sufficiency of the evidence supporting the underlying conviction, "*Jackson* requires . . . that the review occur 'with explicit reference to the substantive elements of the criminal offense as defined by state law.'" *Bledsue v. Johnson*, 188 F.3d 250, 259 (5th Cir. 1999) (quoting *Jackson*, 443 U.S. 324 n.16). The federal courts must "independently analyze the governing statute, the indictment, and the jury charge to measure the constitutional sufficiency of the evidence and determine what are the *essential elements* required by the *Jackson* sufficiency inquiry." *Id.* at 260. When considering a claim of insufficient evidence to support the underlying conviction on federal habeas review, this Court should

only determine "whether the evidence was constitutionally sufficient to convict [petitioner] of the crime charged." *Id.* at 262 (quoting *Brown v. Collins*, 937 F.2d 175, 181 (5th Cir. 1991)).

In this case, the State charged petitioner with burglary of a habitation. CR at 6-9. It specifically charged that, on or about August 19, 2000,[8] in Hunt County, Texas, petitioner "did then and there intentionally and knowingly enter a habitation by intruding his body into said habitation without the effective consent of the owner thereof, Charles Muller, and with intent to commit theft." *Id.* at 6. Under Texas law as it existed at the time of the alleged offense, a person commits burglary of a habitation when he "enters a building or habitation and commits or attempts to commit a felony, theft, or an assault." *See* Tex. Penal Code Ann. § 30.02(a)(3) (Vernon 2003) (showing that statute was last amended in 1999). A person commits a theft "if he unlawfully appropriates property with intent to deprive the owner of property." *Id.* § 31.03(a) (Vernon 2003 & Supp. 2006) (showing current version of statute and setting forth legislative history which shows that 2001 and 2003 amendments did not change cited provision from the version that became effective Sept. 1, 1997). "Appropriation of property is unlawful if . . . it is without the owner's effective consent. *Id.* § 31.03(b)(1) (same). The trial court instructed the jury consistent with the aforementioned statutes. *See* CR at 98-99.

In this instance, the testimony presented at trial establishes that someone entered Muller's home on August 19, 2000, without permission, and stole several items, including a watch, money, and car keys. *See* RR-VIII at 77, 82-84. The testimony also established that law enforcement per-

---

[8] Under Texas law, "'on or about' means before the presentment of the indictment and within the statute of limitations period." *Ex parte Goodman*, 152 S.W.3d 67, 71 (Tex. Crim. App. 2004), *cert. denied* ___ U.S. ___, 125 S. Ct. 2940 (2005). The statute of limitations for burglary of a habitation is "five years from the date of the commission of the offense." Tex. Code Crim. Proc. Ann. art. 12.01, § 4(a) (Vernon 2005 & Supp. 2006) (showing no amendment which alters the limitations period after August 2000, the date of the alleged offense).

sonnel recovered Muller's watch and car keys near petitioner when they encountered him approximately two blocks or so from the burglary site shortly after the burglary. *Id.* at 90, 99, 127, 131-34; RR-IX at 34-38. By reasonable inference, testimony also placed the keys in petitioner's hand when petitioner first encountered Officer McDaniel on August 19, 2000. *See* RR-IX at 34-38. The trial testimony, in conjunction with the letters sent to Muller (State's Exs. 1 and 2a), support a reasonable inference that petitioner was the burglar on August 19, 2000.

The foregoing trial evidence suffices to show each of the essential elements of burglary of a habitation. Viewed in a light most favorable to the prosecution, the Court finds that the record supports the jury verdict. From the evidence, a rational jury could conclude that petitioner intentionally or knowingly entered Muller's home without permission and intentionally took property from him without his consent. Although no direct evidence placed petitioner at the home, a rational jury could conclude that petitioner committed the offense. A rational trier of fact could have found the essential elements of the burglary offense beyond a reasonable doubt. The Court finds that the evidence was constitutionally sufficient to convict petitioner for the burglary of Muller's home.

Petitioner has failed to carry the heavy burden imposed by 28 U.S.C. § 2254(d), as interpreted by *Williams v. Taylor,* 529 U.S. 362, 412-13 (2000), to show that the state court determination of this issue was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding or that such decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States. Accordingly, petitioner is entitled to no federal habeas relief on his claim that the evidence is legally insufficient to support his conviction.

## V.  TRIAL COURT ERROR

In Claim 4, petitioner argues that the trial court committed fundamental error by commenting on the weight of the evidence.  (Pet. at 8.)  In his reply, he clarifies that this claimed error focuses on comments by the trial court related to the admission of State's Exhibits 1 and 2a.  (Reply at 3.) More specifically, it relates to the following comments:

> Good afternoon, Ladies and Gentlemen of the Jury.  Sorry to keep you waiting a little bit but we have been working here and I think the net result is that it's probably going to save you some time.  While you were in recess, the Court has conducted a hearing and as a result of such hearing, State's Exhibit 2A has been introduced by the State and admitted by the Court.  2A is a portion of a letter from the Defendant to his mother.  It's not all of it but the relevant parts, in my opinion, have been put here for you to read.
> State's Exhibit No. 1, the Court has determined that this is a letter from the Defendant's mother to the victims, the Mullers, and I have admitted that in its entirety.

*See* RR-IX at 70-71 (quoted in Reply at 4).

Respondent argues that petitioner has procedurally defaulted this claim, and that in any event, the claim is without merit.  (Answer at 30-31.)  He argues that the claim is procedurally defaulted because the appellate court relied on a lack of contemporaneous objection to find that petitioner had waived the error, if any.  (*Id.*)  He argues that the claim lacks merit because the comment by the trial court constitutes harmless error, if error at all.  (*Id.* at 31.)

Although the appellate court indeed invoked an adequate state procedural bar[9] to petitioner's claim that the trial court improperly commented on the weight of the evidence, *see Breakiron*

---

[9]  Texas state courts strictly and regularly follow the contemporaneous objection rule.  *Dowthitt v. Johnson*, 230 F.3d 733, 752 (5th Cir. 2000).  Such procedural rule is thus an adequate procedural bar to federal review.  *Id.*

*v. State*, No. 05-01-01280-CR, 2002 WL 31455743, at *4 (Tex. App. – Dallas Nov. 5, 2002, pet. ref'd), this Court need not rely on such procedural bar to dispense with the claim.

Because a petitioner is entitled to federal habeas relief due to trial error only if such error is not harmless, *i.e.*, "the error 'had substantial and injurious effect or influence in determining the . . . verdict'", *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993) (citation omitted), the Court need not definitively determine whether the trial court erred in making the comments to the jury.

> [U]nder *Brecht*, a constitutional trial error is not so harmful as to entitle a defendant to habeas relief unless there is more than a mere reasonable possibility that it contributed to the verdict. It must have had a substantial effect or influence in determining the verdict. We recognize, however, that if our minds are "in virtual equipoise as to the harmlessness," under the *Brecht* standard, of the error, then we must conclude that it was harmful.

*Mayabb v. Johnson*, 168 F.3d 863, 868 (5th Cir. 1999) (quoting *Woods v. Johnson*, 75 F.3d 1017, 1026-27 (5th Cir. 1996)). To be entitled to federal habeas relief due to a trial error, petitioner must show the error actually prejudiced him. *Brecht*, 507 U.S. at 637. Petitioner has not shown that the alleged trial court error had a substantial and injurious effect or influence on the jury's verdict. He is thus entitled to no habeas relief on this claim.

## VI. SELF-REPRESENTATION

In his second claim, petitioner alleges that he was denied his constitutional right to represent himself at trial. (Pet. at 7; Reply at 20-21.)

The Sixth Amendment to the United States Constitution provides in pertinent part that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const., art. VI. Because the rights embodied in the Sixth Amendment "are basic to our adversary system of criminal justice, they are part of the 'due process of law'

that is guaranteed by the Fourteenth Amendment to defendants in the criminal courts of the States." *Faretta v. California*, 422 U.S. 806, 819 (1975). The Sixth and Fourteenth Amendments also grant the parallel right to self-representation. *Id.* at 832.

A request to proceed without counsel must be timely and unequivocally asserted. *Chapman v. United States*, 553 F.2d 886, 892-93 (5th Cir. 1977). In addition, a defendant may waive "the right to defend pro se" even after an unequivocal request to proceed without counsel. *Id.* at 893 n.12. "The right of self-representation entails a waiver of the right to counsel, since a defendant obviously cannot enjoy both rights at trial." *Brown v. Wainwright*, 665 F.2d 607, 610 (5th Cir. 1982). Thus, "[e]ven if defendant requests to represent himself . . . the right may be waived through defendant's subsequent conduct indicating he is vacillating on the issue or has abandoned his request altogether." *Id.* at 611.

On September 24 and November 30, 2000, petitioner in this case requested that an attorney be appointed to represent him because he was financially unable to retain counsel. *See* CR at 13, 125. On November 30, 2000, the trial court appointed an attorney to represent petitioner. *Id.* at 13. On December 6, 2000, the court conducted a hearing on a motion to withdraw as counsel, found that appointed counsel had a conflict of interest, and appointed a different attorney to represent petitioner on his request. *See* RR-III at 1-5; CR at 18. On December 7, 2000, the second appointed attorney moved to withdraw as counsel due to a conflict of interest. CR at 19. That same date, the trial court appointed a third attorney to represent petitioner. *Id.* at 21. On March 29, 2001, petitioner filed a pro se motion to dismiss the burglary charge against him, wherein he alleged ineffective assistance of counsel. *Id.* at 22-23. That same date, the third appointed attorney moved to withdraw as counsel, and affirmatively stated that petitioner "desires to be self-represented or pro

16

se." *Id.* at 24.  On April 5, 2001, the trial court granted the motion to withdraw as counsel, and

appointed a fourth attorney (Charles Chatman) to represent petitioner, without addressing the re-

quest to proceed *pro se*.  *Id.* at 28-30.  Mr. Chatman thereafter represented petitioner through trial.

*See* RR-V (showing representation regarding May 18, 2001 hearing addressing pretrial motions); RR-

VI (showing representation regarding July 31, 2001 announcement of ready for trial); RR-VII (show-

ing representation at August 6, 2001 pre-trial hearing); RR-VII through RR-X (showing representa-

tion at trial and sentencing).

On August 15, 2001, petitioner filed a *pro se* motion for new trial in which he makes several

allegations of ineffective assistance of counsel but never mentions that he was deprived of his right

to represent himself.  *See* CR at 114-20.  On August 22, 2001, petitioner filed a *pro se* motion to

dismiss Mr. Chatman, and by letter dated August 24, 2001, he informed the trial court that he had

not yet been "appointed an attorney to represent" him on appeal.  *Id.* at 122-23.  On August 30,

2001, the court appointed a new attorney for purposes of appeal.  *See id.* at 124; RR-XI at 2.  At a

September 19, 2001 hearing on the motion for new trial, petitioner provided testimony regarding his

grounds for a new trial, but never mentioned any desire to proceed without counsel at any point.

*See* RR-XII at 20-34.  In fact, he provided very telling testimony regarding his desire for appointment

of counsel.  *See id.* at 24.  While discussing alleged ineffective assistance of counsel, he testified that

his trial attorney was essentially "scolding" him, telling him that he "could not file any motions on

[his] own behalf, to let [the attorney] do all this."  *Id.*  He then testified:

> And Judge Beacom had told me that when he appointed Mr. Chatman to be my
> attorney that if I could not get along with Mr. Chatman that I would end up having

to represent myself so I felt like my hands were tied and that I had to listen to him
like a little school child.

*Id.*

The record before this Court reveals a timely and unequivocal assertion by petitioner's third
appointed attorney that petitioner desired to proceed without counsel. The record, however, con-
tains no specific, unequivocal assertion from petitioner that he desired to represent himself at trial.
The Court has no need to determine whether the unequivocal assertion by an attorney who is
seeking to withdraw from his appointment suffices to require further court action or consideration
of such assertion, because even if the assertion suffices to invoke the right to self-representation,
petitioner's later course of conduct unambiguously shows that he abandoned any request to represent
himself. Not only did petitioner accept the appointment of Mr. Chatman without objection, he
proceeded with Mr. Chatman as his attorney through trial. In addition, petitioner's pro se motion
for new trial provides no indication that petitioner felt that his right to self-representation had been
violated. Moreover, with his testimony at the hearing on his motion for new trial, petitioner made
clear that he wanted an attorney to represent him at trial. For all of these reasons, the Court finds
that petitioner was not denied his right to represent himself. Claim 2 provides no basis for federal
habeas relief.

## VII. INEFFECTIVE ASSISTANCE OF COUNSEL

In his first claim, petitioner alleges that his trial counsel rendered ineffective assistance of
counsel in the following respects: (a) failing to strike a juror who was familiar with the victim; (b)
failing to object to extraneous offenses introduced through the testimony of the officers who testified
at trial; (c) erroneously introducing an extraneous offense report before the jury; (d) failing to object

18

to the trial court comment on the weight of the evidence; (e) failing to object to State's Ex. 1 and failing to request a limiting instruction regarding the exhibit; (f) failing to cross-examine his mother or call her as a defense witness; (g) failing to file a written motion to suppress; and (h) failing to properly investigate the case. (*See* Pet. at 7(A)-7(B).)

As previously mentioned, the Sixth Amendment provides criminal defendants a right to effective assistance of counsel during trial. U.S. CONST., art. VI. To successfully state a claim of ineffective assistance of counsel under Supreme Court precedent, petitioner must demonstrate (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced his defense. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). A failure to establish either prong of this test requires a finding that counsel's performance was constitutionally effective. *Id.* at 696. The Court may address the prongs in any order. *Smith v. Robbins*, 528 U.S. 259, 286 n.14 (2000).

To determine whether counsel's performance is constitutionally deficient, courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable assistance." *Strickland*, 466 U.S. at 689. Further, "[t]he reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions." *Id.* at 691.

To establish prejudice, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. In the context of ineffective assistance of trial counsel, the prejudice component of the *Strickland* test "focuses on the question whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair." *Williams v. Taylor*, 529 U.S. 362, 393 n.17 (2000) (citations and internal quotation marks omitted). Reviewing courts must consider the total-

19

ity of the evidence before the finder of fact in assessing whether the result would likely have been different absent the alleged errors of counsel. *Strickland*, 466 U.S. at 695-96.

Petitioners must "affirmatively prove prejudice." *Id.* at 693. They cannot satisfy the second prong of *Strickland* with mere speculation and conjecture. *Bradford v. Whitley*, 953 F.2d 1008, 1012 (5th Cir. 1992). Conclusory allegations, furthermore, are insufficient to obtain habeas relief. *Koch v. Puckett*, 907 F.2d 524, 530 (5th Cir. 1990).

## A.  Failure to Strike Juror

Petitioner first complains that counsel failed to strike a juror after he and counsel agreed to strike her.  (Pet at 7(A); Supp. Reply at 1-3.)  In an effort to show bias or  lack of credibility on the part of the juror, he provides a letter from the juror to his mother in which the juror states:  "I am not a personal friend of the Mullers.  In fact, I had never laid eyes on him until the trial.  Where did you hear such rubbish?  I've never seen Mrs. Muller."  (Supp. Reply at 3; Ex. 19 attached to Supp. Reply); *see also* S.H. Tr. at 51.

An "attorney's actions during voir dire are considered to be a matter of trial strategy.  A decision regarding trial tactics cannot be the basis for a claim of ineffective assistance of counsel unless counsel's tactics are shown to be 'so ill chosen that it permeates the entire trial with obvious unfairness.'" *Teague v. Scott*, 60 F.3d 1167, 1172 (5th Cir. 1995) (quoting *Garland v. Maggio*, 717 F.2d 199, 206 (5th Cir. 1983)).

In this case, although during voir dire the juror indicated that she knew the burglary victim, she stated that such knowledge "wouldn't make any difference" to her making a fair and impartial decision.  RR-VIII at 29.  When defense counsel later revisited the issue on voir dire, the juror stated that she "really didn't have an opinion of [the victim]." *Id.* at 55.

20

In light of the evidence of record, the Court finds no deficiency of counsel in failing to strike the juror. Many things factor into the decision as to whom to strike from a jury panel. Petitioner has shown no basis for finding counsel's tactics during voir dire deficient. He has not shown that the tactics were so ill chosen that it permeated his trial with obvious unfairness. He has not overcome the presumption that the failure to strike the juror falls within the wide range of reasonable assistance.

Furthermore, the juror's statements exhibit no bias against petitioner or towards the victim. From her voir dire statements, it appears that her knowledge of the victim would have no impact on her decision. The later submitted letter from the juror exhibits no inconsistency with her voir dire statements. In response to an inquiry as to how she was "acquainted with" the victim, she stated on voir dire: "Just from Commerce. He's from Commerce. I just know the family." RR-VIII at 29. Such statement is not necessarily inconsistent with her later statement that she had never seen the victim until trial and had never seen Mrs. Muller. Regardless of any perceived inconsistency between the juror's in-court statements on voir dire and the out of court statement made in a letter to petitioner's mother, petitioner has failed to show that the juror was actually biased or that her presence somehow tainted the jury. Consequently, petitioner has not shown that her presence on the jury prejudiced him. *See Teague*, 60 F.3d at 1172-73. Without a showing of prejudice, this claim of ineffective assistance necessarily fails.

## B.  Failure to Object to Extraneous Offenses

Petitioner next complains about his attorney's failures to object to alleged extraneous offenses revealed by testimony of the various law enforcement personnel. (Pet at 7(A).) This claim centers

around testimony from various officers that they knew petitioner on sight due to prior dealings with him. (*See* Reply at 10-12.)

Under *Strickland*, petitioner must establish both that his attorney "acted objectively unreasonably in failing to object and that he was prejudiced by the failure." *Vuong v. Scott*, 62 F.3d 673, 684 (5th Cir. 1995) (citing *Strickland*, 466 U.S. at 687).

In this instance, Officer Moore testified that he knew petitioner because he had "had previous encounters with him." RR-VIII at 112. Officer Betterton testified that he had "found Officer McDaniel . . . with a white male known personally as Perry Breakiron." *Id.* at 126. Officer Betterton also testified as to why he asked petitioner to step to the rear of his vehicle: "It's officer safety. Usually when confronting subjects that late at night and me being, prior knowledge of Mr. Breakiron, it's for the officer and the public's safety, to pat him for weapons." *Id.* at 127. Officer Walsh testified that he recognized petitioner "[f]rom past dealings" when the officer first arrived at the intersection where Officer McDaniel encountered petitioner. RR-IX at 22-23. Officer McDaniel testified that she recognized petitioner as he approached her vehicle because he "was someone [she was] acquainted with" and "knew him." *Id.* at 36, 45, 47.

Assuming, without deciding, for purposes of this motion that testimony by some officers that their recognition of petitioner were from past encounters or dealings was objectionable because it raised an inference that such contact was in the context of law enforcement, petitioner has demonstrated no prejudice from the failure to object. He has not shown a reasonable probability that, but for the failure to object, the outcome of his trial would have been different. The admission of the allegedly objectionable testimony does not undermine confidence in the verdict. The

22

testimony does not render the result of the trial unreliable or the proceeding fundamentally unfair. Consequently, this claims fails.

## C. <u>Introduction of Offense Report</u>

Petitioner claims that his attorney rendered ineffective assistance when he erroneously introduced an extraneous offense report before the jury. (Pet at 7(A).) This claim arises out of the admission of Officer McDaniel's report (Def.'s Ex. 3) during her testimony. (*See* Reply at 12-13.) The final sentence of that report indicates that upon petitioner's arrest, "Officer Betterton retrieved, in a plastic cigarette package, six beige rock like objects, believed to be crack cocaine." (*See* Def.'s Ex. 3 contained within Ex. Index, RR-XIII.) Petitioner argues that his attorney should have redacted that sentence before moving for admission of the document. (Reply at 15.) He also argues that the report prejudicially presented him "as an illegal drug user" and provided a basis from which the jury "could logically infer a motive . . . to commit the crime." (*Id.* at 16.)

This claim fails because petitioner has not affirmatively shown that he was prejudiced by the admission of the unredacted version of Officer McDaniel's report. He has shown no reasonable probability that, but for the failure to redact the report, the outcome of his trial would have been different. The admission of the unredacted report does not undermine confidence in the verdict. The admission does not render the result of the trial unreliable or the proceeding fundamentally unfair.

## D. <u>Failure to Object to Comment by Trial Court</u>

Petitioner next claims that his attorney rendered ineffective assistance by lodging no objection to the trial court's comment on the weight of the evidence. (Pet at 7(A).) As previously found by this Court, however, the alleged trial court error had no substantial and injurious effect or influ-

ence on the jury's verdict.   Consequently, petitioner has not shown how the failure to object

prejudiced him.  In the absence of prejudice, this claim fails.

### E.  Failures to Object to State's Exhibit 1

Petitioner claims that his attorney rendered ineffective assistance when he failed to object

to a letter from his mother to the victim (State's Ex. 1) and failed to request a limiting instruction

regarding that exhibit.  (Pet. at 7(A).)  In his reply brief, he clarifies that this claim concerns a failure

by his attorney to object to the letter as hearsay or to request a limiting instruction regarding "this

extraneous offense evidence."  (Reply at 7-10.)

As previously set out, the mother's letter states in pertinent part:  "I am so sorry about my

son's behavior toward you and your home – I wish I could make reparation, but don't know how!"

*See* RR-IX at 70-71; State's Ex. 1.  Before the trial court admitted the exhibit, it held a hearing

outside the presence of the jury in which it heard testimony from petitioner's mother and arguments

from the parties.  RR-IX at 60-70.  When the State offered the letter, defense counsel objected on

grounds of relevancy and on grounds that the probative value was outweighed by its potential

prejudicial effect.  *Id.* at 62.  The trial court thereafter ruled that the letter was admissible because

"it is not prejudicial" and because "the probative value does, in fact, outweigh the prejudicial aspect."

*Id.* at 68.  Counsel thus reiterated his objection that the probative value was outweighed by its

potential prejudice, and the trial court overruled the objection.  *Id.*  Following the ruling by the trial

court, the parties and the court discussed how State's Ex. 1 would be presented to the jury, and it

was agreed that the court would inform the jury that the court had admitted the exhibit outside the

presence of the jury.  *Id.* at 69-70.  The court so informed the jury, and the State published the

24

exhibit to the jury and rested its case without calling petitioner's mother to testify before the jury. *Id.* at 70-71.

As with his other claims of ineffective assistance of counsel, to succeed with this claim, petitioner must show deficient actions of counsel and affirmatively demonstrate a reasonable probability that, in the absence of the alleged deficiencies of counsel, the outcome of his trial would have differed. In other words, petitioner must show that, had counsel properly objected to the letter from petitioner's mother or sought a limiting instruction regarding its use by the jury, a reasonable probability existed that the jury would not have convicted him. In this instance, however, petitioner has not overcome the presumption that his attorney's conduct falls within the wide range of reasonable assistance. He has also not carried his burden to show that the alleged deficiencies of counsel prejudiced him.

For a failure to object to rise to the level of deficient conduct, a valid basis to object must exist. Petitioner has not shown that a hearsay objection would have been sustained. In State's Ex. 2a, the jury saw a request from petitioner that his mother apologize to the Mullers for his actions. *See id.* at 64. His mother testified outside the jury's presence that State's Ex. 1 is a note that she wrote to the victim. *Id.* at 62. The trial court thus could have found that the letter did not constitute hearsay or fell within an exceptions to the hearsay rule. Further, if the objection was sustained, the State could have called petitioner's mother to testify at trial, where she would have either admitted to writing a letter with an apology or would have been impeached with the letter. In either case, the jury would have learned the letter's contents. In such circumstances, a failure to object appears to fall within the range of reasonable assistance. Because the jury would ultimately have heard that the letter contained an apology, petitioner cannot show that he was prejudiced by

25

the failure to object on grounds of hearsay.  The failure to assert a hearsay objection to Exhibit 1 does not undermine confidence in the verdict or render the result of the trial unreliable or the proceeding fundamentally unfair.

With respect to the alleged deficiency of counsel related to a failure to seek a limiting instruction regarding the letter because it constitutes "extraneous offense evidence", (Reply at 9), the Court finds such request unnecessary under the facts of this case.  Rather than constituting evidence of an extraneous offense, the letter presents evidence regarding petitioner's involvement in the crime in question.  The Court thus finds no deficiency of counsel for the failure to seek a limiting instruction and no reasonable probability that, had counsel requested such a limiting instruction, the outcome of trial would have differed.  There is no reasonable probability that the trial court would have granted the request and thus the lack of request had no potential impact on the verdict. This claim entitles petitioner to no federal habeas relief.

## F.  Failure to Cross-Examine or Call Petitioner's Mother

Petitioner also argues that he received ineffective assistance of counsel when his attorney failed to cross-examine his mother or call her as a defense witness.  (Pet. at 7(A).)  This claim is directly related to the mother's testimony outside the presence of the jury concerning her letter.  (*See* Reply at 6-7.)

To the extent this claim relates to a failure to cross-examine the mother outside the presence of the jury, the Court finds that such alleged deficiency had no prejudicial effect on the outcome of trial.  By its very nature, testimony given outside the presence of the jury would have no direct impact on jury deliberations or the verdict.  To the extent that petitioner suggests that such cross-examination would have indirectly impacted the verdict by altering the trial court's ruling on the

26

admissibility of the mother's letter, the Court finds no reasonable probability that any testimony on cross-examination would have altered the court's evidentiary ruling, and thus would have no indirect prejudicial impact on the verdict.

The more relevant inquiry is whether the failure to call the mother to testify before the jury constitutes ineffective assistance. Had counsel called the mother to testify before the jury, petitioner could have presented her reasons for writing the letter to the victim. She testified outside the presence of the jury that she wrote the letter because the Mullers "said that my son had done something but I disagreed with them." RR-IX at 62. She later stated on the record that she wrote the letter because she "had heard these tales outside in the public" and that "gossip was going around, unfounded." *Id.* at 65. Although such explanations were not presented to the jury, the Court finds no reasonable probability that such testimony would have resulted in a different outcome at trial. In State's Ex. 2a, the jury saw a request from petitioner that his mother apologize to the Mullers for his actions. *See id.* at 64. In light of Ex. 2a and the other evidence presented against petitioner, there is no reasonable probability that had the jury heard the mother's explanation for her letter the outcome of trial would have differed. The failure to present the mother's testimony to the jury does not undermine confidence in the verdict. The absence of such testimony does not render the result of the trial unreliable or the proceeding fundamentally unfair.

Because the Court finds no prejudice from the alleged failures of counsel to cross-examine or call the petitioner's mother at trial, this claim entitles petitioner to no federal habeas relief.

## G.   Failure to File Written Motion to Suppress

Petitioner also claims that his attorney rendered ineffective assistance of counsel by failing to file a written motion to suppress. (Pet. at 7(A).) He asserts that the failure caused him to waive

an appellate claim that his arrest and seizure violated the Fourth Amendment. (Supp. Reply at 3.) He argues that Officer McDaniel had no probable cause to detain him and that Officer Betterton had no probable cause to arrest him. (*Id.* at 4.)

Counsel in this case orally moved to suppress any seized evidence that was returned to the victim. RR-VII at 7. The trial court overruled the motion. *Id.* Petitioner now complains that his attorney did not file a written motion to suppress based upon an unconstitutional search and seizure. Petitioner, however, has provided no adequate basis for a successful motion to suppress. The following facts support the detention and arrest of petitioner: (1) at approximately 3:00 a.m. while responding to a request regarding a burglary, Officer McDaniel encountered petitioner; (2) petitioner had something in his hands when initially encountered; (3) petitioner was a couple of blocks from the burglarized home and in the immediate vicinity of stolen items; (4) when Officer McDaniel briefly looked away, she heard the sound of dropping keys and petitioner thereafter had nothing in his hands; (5) Officer McDaniel thereafter spotted stolen items, including a set of keys; (6) Officer Betterton responded to the burglary call and arrested petitioner based upon the existing circumstances. In light of such facts, counsel had no basis to suppress the items recovered near petitioner.

In the absence of a valid basis for a successful motion to suppress, the Court finds no deficiency of counsel related to the failure to file such a motion. Attorneys are "not required by the Sixth Amendment to file meritless motions." *United States v. Gibson*, 55 F.3d 173, 179 (5th Cir. 1995). In addition, unless there is a valid basis to suppress evidence obtained from an illegal search and seizure, a failure to move for suppression cannot prejudice the defendant.

**H.  Failure to Investigate**

Petitioner lastly claims that his attorney rendered ineffective assistance of counsel by failing to properly investigate the case.  (Pet. at 7(A)-7(B).)  He specifically states that counsel failed to investigate (1) the letter from his mother that was in the possession of a police officer, (2) his mother's reasons for sending such letter, (3) the area of his arrest; and (4) prior burglary complaints by the victim.  (Reply at 16.)  He contends that had counsel properly investigated his case he would have learned that a police officer possessed the letter from his mother; that his mother had an explanation for sending the letter; that the area of his arrest was only one block from his home and that he was walking toward the burglarized house rather than away from it; and that the victim's statement regarding stolen items differed from a report that the victim had made on August 19, 2000, related to five different robberies that had occurred that year.  (*Id.* at 17-19.)

Even assuming deficient performance related to the level of investigation by counsel in this case, petitioner is entitled to no habeas relief on the alleged failures under *Strickland*.  Petitioner fails to show how a more thorough investigation would have affected the outcome of his trial.  He has not shown a reasonable probability that had counsel engaged in more thorough investigation the outcome of his trial would have differed.  He presents nothing to undermine confidence in the ver-dict.  Accordingly, petitioner is not entitled to habeas relief on this claim.

In conclusion, the state disposition of petitioner's claims of ineffective assistance of counsel appears consistent with *Strickland*.  For each of his eight claims, petitioner has failed to show a deficiency of counsel, resulting prejudice from a deficiency of counsel, or both.  He has shown no reasonable probability, that but for the alleged failures of counsel, the outcome of his trial would have differed.  He was encountered a couple of blocks away from the burglarized residence near some

29

of the items stolen from Muller, including car keys.  An officer testified that she heard keys dropped to the ground when she looked away for a brief moment.  Although the State presented no direct evidence of petitioner's guilt, the circumstantial evidence was sufficient to convict him.  His complaints of deficient representation present no basis for finding the jury verdict unreliable or the trial fundamentally unfair.

## VIII.  EVIDENTIARY HEARING

Upon review of the pleadings filed herein and the proceedings held in state court as reflected in the state-court records, an evidentiary hearing appears unnecessary.

## IX.  RECOMMENDATION

For the foregoing reasons, the undersigned Magistrate Judge **RECOMMENDS** that the Court **DENY** with prejudice the request for habeas corpus relief brought pursuant to 28 U.S.C. § 2254.

**SIGNED this 30th day of September, 2006.**


IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

The United States District Clerk shall serve a copy of these findings, conclusions, and recommendation on all parties by mailing a copy to each of them.  Pursuant to 28 U.S.C. § 636(b)(1), any party who desires to object to these findings, conclusions and recommendation must file and serve written objections within ten days after being served with a copy.  A party filing objections must specifically identify those findings, conclusions, or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory or general objections.  Failure to file written objections to the proposed findings, conclusions, and recommendation within ten days after being served with a copy shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (*en banc*).


IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

31